Judge Nicholas
delivered the Opinion of the Court.
John Brown, a bachelor of advanced age, died possessed of a large and valuable estate. By his will, lie manifested a determination of dying intestate as to no part of it, and appeared particularly solicitous that his intentions, as to the mode of its disposition, should not be frustrated.
The principal and nearly sole objects of his bounty seems to have been an illegitimate son called John,Brown, an infant of tender years, who died after the date of the will, but before the testator; an illegitimate daughter, Clarissa EL. Pibe, and her daughter, both of whom survived him.
After his death, his heirs filed their bill against his de-visees and administrators with the will annexed, claiming the whole of the estate, real, personal and slaves, devised to John Brown the son, and the circuit court .having dismissed their bill, they prosecute this appeal.
The following are so much of the different clauses of the will, as are necessary to elucidate the grounds of controversy between the parties.
“ It is my will, and I hereby give to my son John Brown my homestead plantation, stock, furniture, slaves -&c. and to his successors forever; but should this, my son *40 John die before he arrives at the age of twenty one years, or without issue, then and in that case, ail that is hereby given to this my son, shall be the inheritance of my daughter Clarissa H. Pike, during her natural life, then to pass to her daughter Clarissa B. Harrison, and to her successors forever, in the line of descent from me. Could such a failure take place as the extinction of the line of Clarissa H. Pike, the true intention is, this estate reverts to my brother and sisters, or their descendants, in legal right, save the estate herein named, lying on Never-sink, in New Jersey, which it is my will, and I hereby order, shall pass to my nephew John Brown,” &c.
Devise to Mrs. Pike — #-c.
Residuary devise ' to J. B. ftho son.)
Chancery 1ms no jurisdiction of the suit of the heirs, to recover the real estate devised to others — the reme-■fly is at law.
“It is my will, and I hereby give to my daughter Clarissa H. Pike, all that certain tract of land, &c., also one equal half of my stock in the Miami Exporting Company — sixteen shares, thirty two in the whole, to her and her successors. But should my daughter Clarissa die and all her progeny, this landed estate to' return into the hands of my son John, to remain his and his successors’ forever.”
“ As my daughter Clarissa has had her bringing up, with her education, with her daughter Clarissa B. Harrison’s, at my expense, with other property and money given to both, and as John is now an infant, and yet to receive his education, to complete which it is my will? and I do hereby give to this my son, the residue of my estate, not heretofore given away; that is, the other half of my Miami Bank Stock, sixteen shares, with any balance due me from said bank for deposits : all claims or title of land I may have at my death, in any of the United States, all bonds, notes, claims or contracts, dues and demands of whatever nature or kind, I may be the owner of.”
As to so much of the bill as goes for a recovery of the real estate, the Court properly dismissed it for want of jurisdiction. If the complainants have any right thereto, their remedy was at law, and there is no reason shewn for resort to equity.
Their claim to the slaves and'personal estate devised to John the son, is based on two grounds : first, because the contingency on which Mrs Pike was to take, was too *41 demote, ami the devise over to her, therefore void; and, .second, because the whole became lapsed, and descended to them, by reason of the death of John the son, in the Mfe time of the testator. They further insist, that they are at least entitled to the property embraced by the residuary devise, because, as they contend, there is no devise over of that, to Mrs. Pike.'
Questions lip- ' on the descents, devises and limitations over of slaves, under the statutes of Ken. suggested, and waived.
A devise to J., the son, and if he “ die before he arrives at the age of 21, or without issue,” then to C. §-e. construed to mean a failure of issue at the time of the son’s death, and held to - be a good limitation.
As it regards the slaves, two questions present themselves, and might properly be discussed in this case. First, whether, notwithstanding the act of 1800, which directs slaves to pass by will as land, the act of 1798; 2 Dig. 1156, still restrains a devisor from limiting them, otherwise than a chattel personal is 1 imitable by the rules of the common law. Second, whether the distinction, mentioned in the books, as to the difference of construction given to the words, dying without issue, when used in a devise of realty, and when used in a devise of personalty, actually exists, or is based upon tenable principles. But we shall waive a decision of both those questions, and dispose of the claim asserted under the first devise, on the ground that the real estate passed thereby to Mrs. Pike. For it must be admitted, that if the land passed to her, the slaves and personalty passed also.
The questions, raised upon the first devise, even when treated as a devise of land alone, though of importance on account of the property involved, are of no intrinsic difficulty; for they will be found, on examination, to have been long and well settled.
The first is, whether the devise over to Mrs. Pike and her daughter, if “this my son die before he arrives at the age of twenty one, or without issue,” be upon a contingency too remote, to be allowed to take effect' according to the rules of law. This depends upon another question: that is, whether an indefinite failure of issue, Was meant by the testator, or such failure at the time of the sonTs death. If the latter, then the limitation is good. And that he intended the latter,we think, results, not only from the natural and proper signification of the terms as used, but from all the cases and authorities on this subject.
The phrase “ dying loithout'issue,” is said to have two significations; the one legal and artificial, that is, an inde-- *42 finite failure of issue ; the other natural and common sense, that is a failure of issue, living at the time of the death. The first is said, always to obtain in devises of land, un» less there be other expressions or circumstances on the „ „ ,. , face °f “ie will, to control it otherwise.
In the case of Moore vs. Howe — 4 Mon. 204, this Court said, <£ the expression, dying without issue, has been construed to mean an indefinite failure of issue, only because it was supposed,when taken alone, to indicate such to be the intention of the testator ; but when the devise over must take effect, if it takes effect at all, in the life of a person in being, it is plain, that to construe the expression to mean an indefinite failure of issue, would be inconsistent with the intention of the testator, and to effectuate that intention, therefore, the expression, dying without issue, ought and must, in all such cases, he construed to be a dying without issue living at the time of the death, on which the devise over is made to depend.” It was accordingly held, that this rule applied to, and governed, the construction in that case, because the devise over was of an estate for life only. See, also, Moseby vs. Corbin, 3 Mar. 289.
In confirmation of this rule, we may refer to the language of Mr. Fearne, in his work on Executory Devises — p. 376 : “ Though an executory devise in tail or in fee to one in esse, to take place after a dying without issue, is void, yet an executory devise for life to one in esse, to take place after a dying without issue, may be good; because, in the latter case, the future limitation being only for life of one in esse, it must necessarily take place during that life, or not at all, and therefore the failure of issue, in that case, is confined to the compass of a life in being;” See, also, 3 Sound. 388, c.
According to this rule, the devise over to Mrs. Pike, being for life only, the testator must be understood to mean, a dying without issue at the time of the son’s death. Consequently, the contingency was not too remote, and Mrs. Pike and her daughter could well have taken, though the son had not died until after the testator.
If an estate is devised to one, and in- case he dies without issue, then to another, and the first devisee dies in the life time' of the testator, the devise does not lapse, but passes to the second devisee —otherwise, if the first devisee survives the testator.
The testator, in the-first devise — to his son, declares that, if the son die with out issue, “ all that is hereby given to my son,shall be the inheritance of my daughter and by the last clause, devises the residue of his estate to the son,withoutany mention of the daughter. The son having died without issue in the life time of the testator— -held, upon the presumed inten - tion, as indicated by the entire will, that the daughter was entitled to the “residue,” by virtue of the limitation in the first devise. ”
Nor does his death previous to that of the testator, affect their right. Moore vs. Howe, supra. On the contrary} that circumstance would have enabled them to take, when otherwise they could not have done so, on account of the remoteness of the contingency, had he survived the testator, and the estate been vested in him. In the case of Fuller vs. Fuller, Cro. Eliz. 422 — where a man devised land to his second son R. and to the heirs of his body ; and after his death, without issue, to his third son E. and R. died in the life of the testator, leaving children who survived him, it was held that E. should take the land presently ; lor, as there said, the devise to R: being void, it is as if it had never been made. See, also, the case of Hutton vs. Simpson, 2 Vernon, 722, to the same effect — 2 Bac. Ab. Tit. Devise, p. 86. Gulliver vs. Wicket, 1 Wilson, 105 — Lowndes on Legacies, 412.
Whether Mrs. Pi be can take the property embraced in ’ the residuary devise to John, the son, is a question of more difficulty, and about which we have entertained some doubt. It turns upon the effect to be given to the words in the first clause above quoted, “ all that is hereby given to this my son, shall be the inheritance of my daughter ” &c. Does the word hereby, refer merely to that clause of the will in which it is found, or to the whole will, embracing every thing, devised by it to the son ?. It must be conceded, that if it stood alone,without any other controlling .circumstance, its application, either way, would be somewhat arbitrary. The other circumstances lean both ways, and leave the matter nearly as it would be without them.
In favor of the restrictive application, there may be' urged, first, the mode of giving the remainder over to the son, limited on the devise to the daughter, “this landed estate to return into the hands of my son,” pretermitting ex cautela, as it would appear, her half of the bank stock, &c. the other half constituting the first item of enumeration in the residuary devise. 'Second, the term, ‘‘this estate,” used in making provision for his brother and sisters after the failure of Mrs. Pike’s issue,which would seem to have a more natural and rational reference to *44 the estate devised by that clause, than to the whole of the devises to the son, including those thereafter to be marie. Third, the manner of qualifying the limitation over in favor of his nephew, “ save the estate herein named, ly- * « ing in New Jersey,” &c.which might be supposed to point still more clearly to the property devised by that clause of the will, as the one alone, which the testator then liad in his mind, and to which all the limitations over were applicable. Fourth, the actual collocation oí the word hereby and of the whole limit ation ovei m favor of Mrs.. Pike, which enables the court fully to satisfy the language used, without extending it beyond tiie devise embraced by that clause.
But the circumstances in favor of the broader construction, are perhaps still stronger, and have lean us to the conclusion, that the intention of the testator will more probably be effectuated-thereby. They are mainly and briefly' these : first, the manifest intention of devising his- whole estate, to the almost total exclusion of llis heirs and legal distributees. Second, his two illegitimate children were the sole and nearly equal objects of his regard' and munificence. Third, as to the pi incipal devises to both, in case of the death of either without issue, he gives the property' over to the other surviving. Fourth, he introduces the residuary devise, with an apology or explanation to his daughter, for giving the whole of it to his son, and thereby creating an inequality in the division of his estate between them. He addresses no such apology to his brother and sisfers. Now, this apology would not have been fuffand.satisfactory, as he no doubt intended it, unless he supposed he had provided for his daughter, taking this part of the estate also, in case the son died before her without issue. The apology implies,, that but for the-son the whole would have been given to her. There is strong reason, therefore, for presuming he intended to. give her, or thought he had given her, the same benefit of survivorship as to this property, that he had secured to the son, as to the whole of the property devised to her, except the sixteen share’s of bank stock, which it' appears, were of but life *45 tie value. And as the language used in creating the limitation over in her favor, is broad enough to admit this interpretation, we shall adopt it as best calculated to effectuate the intention of the testator.
Decree affirmed, with costs.