# CHARLESTON.

HELEN TRAHERN *et al., Infants, etc. v.* HOWARD WOOLWINE *et al.*

(No. C. C. 431)

Submitted September 3, 1930. Decided November 12, 1930.

*Wm. T. George, J. Blackburn Ware,* and *Paul B. Ware,* for plaintiffs.

*E. L. Maxwell, Stanley Bosworth,* and *E. A. Bowers,* for defendants.

LITZ, JUDGE:

This suit, for partition of real estate, was instituted by part of the heirs at law of Columbia Woolwine, deceased, against the remaining heirs, and A. S. Bosworth and Nellie A. Maxwell who assert fee simple title to specific portions of the land in suit under conveyances from Columbia Woolwine. It involves the construction of a deed of conveyance, dated Feb-

624

ruary 19, 1868, between "Matthew L. Ward and Amanda, his wife of the County of Randolph and State of West Virginia, of the first part, and Lewis Woolwine (*for the use and benefit of Columbia, his wife, and upon her decease to descend to her heirs*) of the same County and State of the other part." The body of the instrument follows: "Witnesseth, that the said Matthew L. Ward and Amanda, his wife, for and in consideration of the sum of Fourteen hundred dollars, One thousand of which has been paid, the remaining four hundred dollars to be paid the first day of October, 1868, convey unto the said Lewis Woolwine for use etc., a certain tract or parcel lying in Randolph County on Tygarts Valley River and on the Beverly and Fairmont Pike about six miles North of Beverly (described by courses and distances), containing one hundred fifty-eight acres more or less. A square of six acres adjoining the north side of Jesse Goddins tract is reserved, the said $400 to be paid the first of October, 1868, is to remain a lien upon the land until paid, the said Matthew L. Ward and Amanda, his wife, covenant that they will warrant generally the property hereby conveyed."

The bill alleges that the deed operated to convey to Columbia Woolwine a life estate in the land (which is now part of the city of Elkins), with remainder to her heirs at law; and that she executed deeds (in some of which her husband, Lewis Woolwine, and "possibly" part of her children, joined), purporting to convey in fee simple to various purchasers (including the defendants, A. S. Bosworth and Nellie A. Maxwell) numerous parcels of said land, leaving unsold at the time of her death portions thereof which have not been partitioned among her heirs. There is a prayer for the partition of all of said original tract of land among the plaintiffs and the other heirs at law of Columbia Woolwine.

The defendants, A. S. Bosworth and Nellie A. Maxwell, demurred to the bill for non-joinder of necessary parties and because the deed, under consideration, conveyed to Columbia Woolwine a fee simple estate. The circuit court overruled the demurrer and certified its ruling to this Court for review under section 1, chapter 135, Code, as amended by chapter 28, Acts of 1925.

Both sides to the controversy desire a disposition of the case on the second ground of demurrer.

Plaintiffs, in support of their position that Columbia Wool-wine took only a life estate under the deed, rely entirely upon the language in the caption thereof ''for the use and benefit of Columbia Woolwine and upon her decease to descend to her heirs''; while the demurrants insist that the instrument, construed in its entirety, fairly indicates an intent on the part of the grantors to convey to her a fee simple title, or such an estate as would at her death ''descend to her heirs.'' The plaintiffs contend that the words ''for the use and benefit of'' as well as the remaining language of the phrase (except the word ''descend'' considered in its technical sense) evidence an intent of the grantors to convey to Columbia Woolwine a life estate only. As the deed was made prior to the Code of 1868, it was necessary to convey the property in trust ''for the use and benefit of'' Columbia Woolwine in order to invest her with a separate estate. *Central Land Co. v. Laidley*, 32 W. Va. 134. The conveyance to her husband for her use and benefit operated, under the statute of uses (section 14, chapter 71, Code 1923), to transfer the possession to her of the estate or interest which she had in the use, whether for life or in fee. Minor on Real Property, Vol. 1, pages 554, 555. The language, ''and upon her decease to descend to her heirs,'' is, therefore, the sole reliance of plaintiffs. The construction contended for by them is opposed by covenants of title accompanying the grant, an apparent adequate consideration for the fee and the legal definition of the word ''descend,'' which, according to 1 Bouvier's Law Dictionary, page 852, means ''to pass by succession; as when the estate vests by operation of law in the heirs immediately upon death of the ancestor.'' At page 791, 18 C. J., it is stated: ''The word (descend) ordinarily denotes the vesting of the estate by operation of law in the heirs immediately upon the death of the ancestor.'' And in foot-note 93, page 792, (quoting from *Johnson* v. *Mortan,* 10 Pa. 245, 248), the same authority states: ''It is well remarked that the word descend is inapplicable to any estate less than a fee.''

In *Chipps* v. *Hall,* 23 W. Va. 504, JUDGE GREEN, discussing

a devise (prior to the modification or abolition of the rule in *Shelley's* case) of a tract of land to the wife of the testator, during her natural life, then to his son and at his death "to *descend to his heirs*," said: "How is it possible to suppose that the testator did not intend to use the word heirs in its strict technical sense? When lands *descend* it must necessarily be to the ancestor's heirs in the strict technical sense. A testator using this language could not possibly have been contemplating particular individuals only, he must have meant what he said, heirs, thereby meaning a class of persons to take indefinitely in succession; and as a matter of course the rule in *Shelley's Case* would then apply. The language used is so very strong to show that this was his meaning, that in my judgment it is doubtful, whether, if this will had been made after the abolition of the rule in *Shelley's Case,* the testator's son, Jefferson, would not still have taken a fee simple. For though the will does say, that this land is given to him during his natural life, yet when the testator adds that at his death it shall *descend* to his heirs, he used language utterly inconsistent with his son Jefferson having nothing but a life-estate in the land. No matter how ignorant the testator may have been, I cannot conceive that he did not know that a life-estate could not *descend* to a man's heirs on his death. He must have known, that in this State nothing but a fee simple estate descends to a man's heirs at his death. And in using such language he appears to have regarded himself as having given this land in fee simple to his son Jefferson. Even if the will had been made since the abolition of the rule in *Shelley's Case,* to hold that Jefferson had but a life-estate would be to disregard the plain and significant words that at his death this land should *descend* to his heirs." '

*Carter* v. *Reserve Gas Co.,* 84 W. Va. 741, holds that a conveyance of land to a person to be "held and enjoyed by said party during his life, and at his death *to descend* to his heirs," creates a life estate in such person and a remainder in fee simple in his heirs by virtue of section 11, chapter 71 of the Code, (modifying the rule in *Shelley's Case*), as the words "to descend," appear by the context to have been used in their

popular sense. In the opinion, delivered by JUDGE POFFEN-
BARGER, it is stated: "Intent to vest a fee simple estate in Har-
rison W. Carter cannot be inferred from the use of the words
'to descend,' in this deed, for they must be considered in con-
nection with their context. Harrison's estate is expressly
limited to the duration of his life. The deed says the property
is 'to be held and enjoyed' by him 'during his life.' If this
informal clause may be treated as an habendum, it limits the
grant to one for life, for the premises grant the land in gen-
eral terms. In such case, the estate is limited and defined by
an habendum saying the grantee shall hold for life. *Freuden-
berger Oil Co.* v. *Simmons,* 75 W. Va. 337, 341; 2 Min. Inst.
2nd Ed., 629; 2 Lomax Dig. 215; *Humphrey* v. *Foster,* 13
Gratt. 653. If it is to be regarded as a part of the premises,
the limitation is still more obvious. These express terms are
not overthrown nor qualified by any presumption that the
words 'to descend' were used in their technical sense. A mere
presumption always yields to the force of express words of
negative import. Nor does the inhibition of sale or disposi-
tion of the property clearly or conclusively import intention
to grant a fee simple title. It may have been intended to ap-
ply to a mere life estate as well as to a fee simple estate. In
some cases, the word 'descend' in wills and deeds has been
allowed a strongly persuasive influence, in the interpretation
of ambiguous or doubtful provisions found in other parts of
the instruments or to resolve a doubt as to the intent expressed
by an entire instrument. *Chipps* v. *Hall,* 23 W. Va. 504;
*Browning's Petition,* 16 R. I. 441; *Eaton* v. *Tillinghast,* 4 R. I.
276; *Taney* v. *Fahnley,* 126 Ind. 88." As may be observed
from a study of the opinion, the court held that the presump-
tive or technical meaning of the word "descend" was con-
trolled by the language of the deed giving to the first taker a
life estate in express terms, thus overruling the dictum of
JUDGE GREEN in the *Chipps-Hall* case.

*Morris' Exrs.* v. *Morris' Devisees,* 48 W. Va. 430, construes
a devise as follows: "I will and devise all of my real estate
situate in the town of Morgantown, West Virginia, to my exe-
cutor hereinafter named, to be held by him in trust, for the
use and benefit of my two brothers, namely, John J. Morris and

William L. Morris; and five sisters, namely, Sarah Ann Hall—dead—Eliza Dunham, Anna C. Hall, Mary E. Stewart and Olive M. Snider, which properties are to be held and controlled by the said executor for their benefit for a period of twenty years after the date of my death, the rents, issues and profits thereof to be paid over annually to my said brothers and sisters equally, and in the event of the death of any one of them then to his or her heirs respectively * * *.'' JUDGE BRANNON, in delivering the opinion of the Court, said: ''As I understand it, the question aimed at is whether the living brothers and sisters, John J. Morris, William L. Morris, Eliza Dunham, Anna C. Hall, Mary E. Stewart and Olive M. Snider, and the children of Sarah Ann Hall, deceased, take only a limited estate, that is a life estate, with remainder to their heirs, or take an absolute estate under the will. The answer is that by the will at the testator's death the living brothers and sisters and the children of the dead sister, Sarah Ann Hall, took at once, under this section of the will, an absolute estate in the properties therein specified, an equitable fee simple * * * . Counsel seem to think that when this section of the will uses the language, 'in the event of the death of any one of them, then to his or her heirs,' the testator meant only to refer to the contingency of the death of the devisees prior to his own death. I do not think so. I think he meant their death at any time; but I do not think that by the use of that clause the testator intended to detract from the fullness of the gift and benefit conferred upon his devisees by this section of the will.''

In *Irvin* v. *Stover*, 67 W. Va. 356, it was held that a grant of a tract of land to husband and wife ''to be held by them as a homestead for themselves, and after them to their heirs,'' passed a contingent remainder to the heirs of the husband and wife, respectively. In reaching this conclusion, the court said: ''In order to ascertain who is now entitled *of* the land, it is first necessary to construe the deed from Lewis Stover and wife to Tollison Stover and Martha Jane, his wife, wherein the following language is used, viz: 'to be held by them as a homestead for themselves, and after them to their heirs.' Do not these words limit the estate to Tollison and

Martha Jane for life only? If these words are to have any meaning at all they clearly have this effect. Without these words the deed would have operated to carry a fee, under the statute providing that the greatest estate the grantor has shall pass, unless it appear that a less estate was intended to be conveyed. Section 8 chapter 71, Code, 1906. We think these words operate to invest Tollison and Martha Jane Stover with a life estate by entireties. By the use of the word *homestead* it was not the intention of the grantor to create a technical homestead, but only to indicate the purpose for which the land was to be used; that is, as a place of abode; and by the words, 'and after them to their heirs,' he must have meant *after their death* to their heirs. In the case of *Arrants* v. *Chumley,* .... Tenn. ...., (48 S. W. 342), the supreme court of Tennessee held that the use of the word *homestead* in a deed containing a similar clause to the one we are now considering operated to invest the grantee with a life estate only. No particular words are necessary to create a life estate, any language in the conveyance which sufficiently shows the grantor's intention will suffice. It is a settled rule in construing deeds, as well as wills, that the language of the instrument will be given that construction which will clearly effectuate the intention of the parties, when such intention does not contravene some principle of law. *Perkins* v. *Dickinson,* 3 Grat. 335; *Allemong* v. *Gray's Admr.,* 92 Va. 216 (23 S. E. 298) ; *Temple's Admr.* v. *Wright,* 94 Va. 338; *King* v. *Ry. Co.,* 99 Va. 625; *Lindsey* v. *Eckels,* 99 Va. 668; *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *Uhl* v. *R. R. Co.,* 51 W. Va. 106; *Waldron* v. *Coal Co.,* 61 W. Va. 280. The effect, therefore, of Lewis Stover's deed was to invest Tollison Stover and Martha Jane, his wife, with an estate by entireties for life, and to create a contingent remainder in fee in favor of their respective heirs. The word *heirs* as used in the deed must be taken to have its legal and technical meaning and to denote that class of persons on whom the law would cast the descent, if the person whose heirs they are should die seized with an inheritable estate, because there is nothing in the conveyance to indicate that the grantor meant to restrict its meaning."

None of the numerous cases cited in the learned and exhaus-

tive discussions of counsel involved a deed or will containing language like that under consideration in this case. The foregoing have been liberally quoted because they are especially relied on by the parties as supporting their respective contentions.

We have in the Woolwine deed (1) the words "for the use and benefit of Columbia (Woolwine)" which are necessary, under the statute of uses, to invest in her an estate free from the control of her husband; (2) a conveyance for an apparently adequate consideration with covenants of general warranty of title; and (3) the presumed legal meaning of the word "descend." In view of these circumstances, it is our opinion that the grantors intended to convey to Columbia Woolwine a fee simple title or such an estate as would "upon her decease * * * descend to her heirs." Assuming, as plaintiffs contend, that the word "descend" should be given its popular meaning not only where there is an express life estate in the first taker, but also when such estate is necessarily implied from the language of the instrument, it is our conclusion that the language of the deed, considered in its entirety apart from the word "descend," does not clearly warrant the implication of a life estate only in Columbia Woolwine.

The ruling of the circuit court overruling the demurrer to the bill is therefore reversed.

*Reversed and remanded.*