NATIONAL BANK OF FAIRMONT *v.* DAN KENNEY *et al.*

(No. 7484)

Submitted May 10, 1933.    Decided June 6, 1933.
(Rehearing denied August 1, 1933)

*M. M. Neely* and *Harry E. Watkins,* for appellants Joseph S. Connally and others.

*Chas. L. Estep,* for appellants Dan Kenney and others.

*A. F. McCue,* for appellee C. Brooks Deveny.

KENNA, JUDGE:

The National Bank of Fairmont, as administrator, etc., of the will of Ella Horan, filed a bill in equity under section 7, article 3, chapter 41 of the Official Code of 1931, in the circuit court of Marion county seeking a construction of the testatrix' will. After providing a life estate for her husband, Lawrence Horan, who died before she did, the will disposes of the entire estate by placing it in trust, for certain purposes, and then proceeds to make disposition of the corpus under the following provisions:

> "3.   Should my husband, Lawrence Horan, survive me, I desire that he shall have the use of all my property so long as he may live, and after his death, the said property to be disposed of as follows:

"4. Subject to the above provision (3), and to the conditions hereinafter stated, I give, devise and bequeath to my said Executor, Lawrence J. Horan, all my property, real and personal, in trust for the following purposes only, and not otherwise:

"(a) My Executor shall manage the estate as best he can, keeping the building insured against loss of fire, and in good repair, at the expense of the income derived from said estate, and shall collect the rents and profits monthly in advance, and all leases on said property must be in writing; but he shall not sell any of said real estate.

"(b) Out of the income derived from said estate, my son, Charles L. Horan, must first be supported and maintained in some good Institution, preferring that in which he now is, at a cost of at least fifty dollars per month, but not more than one hundred dollars per month; and out of the remainder of said income, my son Lawrence may have for his own use the whole of said remainder, unless such remainder be more than is expended from month to month for Charles; in which latter event, Lawrence shall receive no more for his own use than an amount equal to that expended for Charles, and the residue above said amount shall be added to the principal of the personal estate.

"(c) Sub-section (b) above, is subject to the condition that if my son Charles should be restored to his normal condition at any time, then during the time such normal condition, continues, the income from all said real and personal estate shall be divided equally between my said two sons.

"5. Should either of my said two sons die without leaving lawful issue, the share of the one so dying shall go to the other; but if one of my said two sons die leaving lawful issue, the share of the income of the one so dying shall go to his said issue during the life of my surviving son; and after the death of the son so surviving, if both shall have left issue surviving at that time then all said estate shall be divided into two equal parts,—one of which equal parts shall go to the issue of Charles, and the other to the issue of Lawrence J. Horan; but if only one of my two sons should leave issue surviving after the death of both my sons, then all said property shall go to such issue; and should both my two sons die without either of them leaving issue surviving both;—in that event, all said property shall be disposed of as follows:

"(a)  One thousand dollars shall go to the Rector of St. Peters Catholic Church, Fairmont, West Va., for the benefit of said St. Peters Church;

"(b)  One thousand dollars shall go to the Bishop of Wheeling Catholic Diocese for the benefit of the Home for the Aged Poor of said Diocese;

"(c)  Three thousand dollars shall go to the said Bishop of Wheeling for the benefit of the Wheeling Hospital and Orphan Asylum of Wheeling Catholic Diocese;

"(d)  The residue of said property shall go to my heirs."

The contested question hinges upon the construction of subparagraph (d) of paragraph 5 of the provisions above quoted. The question involved is whether the expression "my heirs", used by the testatrix, speaks as of the date of her death or as of the date of the death of her last surviving son, both of whom died without issue. The trial court found that the provision in question was to be applied as of the date of the testatrix' death and that consequently the estate passed under the will of the last surviving son and vested in the appellee, Deveny. The appellants are those in whom the estate would vest if the provisions in question were made to speak as of the date of the death of the last surviving son.

Appellants contend that according to the plain meaning to be gathered from the will itself, the testatrix had in mind that the expression "my heirs" should be ascertained if and when both of her sons had died without issue and at the time of the death of the last surviving son so dying. The appellees say that this is not the true construction of the will; that the will must be considered as having been drawn in the light of "the well-established" cases governing the question; that these cases are based primarily upon the settled principle that the law favors the vesting of estates and that from that principle has grown the settled rule of construction that the term "my heirs" used in a will is to be applied and the persons under it ascertained at the time of the testatrix' death; they cite numerous cases sustaining this view, including the Virginia cases of *Stokes* v. *Van Wyck*, 85 Va. 724, 3 S. E. 387; *Hansford* v. *Elliott*, 9 Leigh (Va.) 79, and *Martin, Adm'r.* v. *Kirby, Adm'r.* et al., 11 Gratt. 67. These cases undoubtedly do

so hold and there are many in the United States like them. Appellants, however, reply to this argument that the rule invoked by appellees is not universal of application and that although it has been adopted unquestionably in the state of Virginia, that this court has heretofore declared that it is an artificial rule, the following of which would frequently result in perverting the obvious intention of the testator, and they insist that this court has virtually repudiated it, adherring to the fundamental rule of ascertaining from the will itself what the true intent of the testator was.

Judge Brannon, in the case of *Schaeffer* v. *Schaeffer*, 54 W. Va. 681, 683, 46 S. E. 150, vigorously and ably attacks the Virginia rule. He, himself, reasons it to be fallacious, and, furthermore, marshals highly respectable text and case authorities against it. Without going into a protracted discussion, we are of opinion to adopt the view of Judge Brannon. To do otherwise, it would seem, would but perpetuate an artificial rule of construction which might, and probably would, in many cases work the same injustice that we believe it would work in this.

Having therefore determined that this case cannot be decided on the basis of a rule of construction giving invariable legal meaning to the expression used, we fall back for its determination upon the fundamental rule of ascertaining from the instrument itself the intention of the testatrix.

The first disposition made in the will is the creation of a life estate in all of the testatrix' property in her husband, Lawrence Horan. The husband died before she did. The next disposition is to vest the estate in the executor named, in trust to be managed by him and to pay out of the income (1) for the maintenance of Charles L. Horan in an institution at a cost of at least $50.00 a month but not more than $100.00 per month; (2) a life estate in testatrix' son, Lawrence, of the remaining income of the estate, unless such remainder be more than is expended on the maintenance of Charles, Lawrence to have no more than is expended upon the maintenance of Charles, and the residue of the income to augment the principal of the estate; in the event that Charles is restored to his normal condition, during such time as such condition continues, the sons are to divide the entire income equally; (3)

if either of the sons die without lawful issue, the share of that son is to pass to the other; if one die leaving issue, his share of the income is to pass to that issue during the lifetime of the surviving son, and at the death of the surviving son, if both shall leave issue surviving, then all the estate to be divided in two equal parts, one part to go to the issue of each son; that if only one son should leave issue surviving after the death of both, then all of the estate to pass to the issue of the one son upon the death of the last surviving; and should both sons die without leaving issue, in that event, all of the estate is to be disposed of in the manner indicated, i. e., after certain bequests, the residue to the testatrix' heirs.

In our opinion, this will within itself bespeaks a purpose to have the final vesting of the testatrix' estate occur upon the death of the last survivor of her two sons, and, in the event of the contingencies named to make it necessary to have the class of persons falling within the designation of the testatrix' "heirs" ascertained as of that time. It seems to us that the landmarks of the paper itself unmistakably so indicate. In the first place, it is difficult for us to imagine a layman who would sign a will, the construction of which would require that the same persons who were made the beneficiaries of a life estate in the income of property, should years afterward, and after their own death, be used again in the capacity of the testatrix' heirs as the medium through which property might pass to strangers. It would seem to us that this construction would result in defeating the purpose of the testatrix, in this: the testatrix evidently intended to keep this property in her own family by the use of the expression "my heirs". To permit the class of persons who take to be ascertained as of the death of the testatrix, would mean that, as in this case according to the decision of the trial court, the class of persons so ascertained could alienate the contingent interest that they would have upon the death of testatrix. The last surviving son, both being without issue, by will could dispose of the entire estate to strangers. That would certainly not be the purpose of the testatrix. The estate then would not be passing under her will, as she obviously intended, but would be passing under the will of some other person. It would be tantamount to vesting in the surviving son a power of dis-

posing of the testatrix' estate. This, obviously, she did not intend. She intended to make final disposition of it herself.

In addition to the foregoing, it is apparent that if either of her sons had left issue which survived the last surviving son, then upon the death of the last surviving son, the class of persons who would take would be ascertained at that time, and not at the death of the testatrix. The will having made it so obvious that this would be the result in one contingency, are we not justified in inferring that the testatrix intended the vesting of the estate to take place at the same time in either contingency?

Furthermore, in the event that under the will it became necessary to ascertain the heirs of the testatrix who were to receive the residue, it must be remembered that there are certain specific bequests to be made in that event. The language of these specific bequests plainly indicates that the beneficiaries of them are to be ascertained at the time of ascertaining whether or not these bequests are to take effect. That time is the death of the last surviving son. If either son left issue, these bequests would be wiped out. The death of the last survivor plainly determines the events upon which the estate, including these bequests, is to vest. The bequests are so worded as to make it necessary for them to speak as of that time. The Rector of St. Peter's Catholic Church, Fairmont, West Virginia, evidently was intended to be ascertained at that time. To say that you must go back several years to the date of the death of the testatrix for the purpose of ascertaining these individuals, would be plainly violative of the testatrix' sensible intention. Then, if these bequests are to take effect upon the death of the last survivor, and after they are paid the beneficiaries of the residue to be ascertained, would it not do violence to the will to say that the individual legatees ought to be ascertained at the time when the contingency making them beneficiaries is established as a fact, and to say in the same breath that for the purpose of ascertaining the testatrix' heirs under the residuary clause we must look to the time of her death?

We believe that for the purposes of this case, the true construction of the will of Ella Horan is arrived at by ascertaining the class of persons designated as ''my heirs'' in sub-

paragraph (d) of paragraph 5 of her will, dated May 12, 1908, at the time of the death of her last surviving son. Therefore, the decree of the circuit court of Marion county is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*