W. S. Brookover *v.* Lottie B. Grimm *et al.*

(No. 8430)

Submitted January 26, 1937. Decided February 9, 1937.

228

Kenna, Judge, dissenting.

*James E. Law* and *George W. Bland,* for appellant.
*M. H. Willis,* for appellees.

Maxwell, Judge:

The primary purpose of this suit is for construction of Items IV, V, VI and VII of the last will of Samuel L. Morgan, deceased. When the case was here on first ap-

peal, we held that the trial court had erred in sustaining a demurrer to the bill and dismissing the same out of court, it appearing that certain paragraphs of the will are ambiguous, and that, under Code 1931, 41-3-7, the plaintiff was entitled to a judicial interpretation thereof. We reinstated the cause and remanded it to the trial court for construction of the testamentary paragraphs involved. *Brookover* v. *Grimm*, 114 W. Va. 701, 174 S. E. 567. We were of opinion that "ambiguity", within the meaning of said statute, is a testamentary provision capable of being understood in either of two or more possible senses, and is inclusive both of provisions which may be construed from the context alone, and of those requiring parol evidence for elucidation. We considered this matter in the former, not the latter, sense.

The plaintiff, W. S. Brookover, was the father of Paul Brookover, now deceased, who was a devisee and legatee under the Samuel L. Morgan will. When the testator died, July 12, 1923, Paul was of the age thirteen. In November, 1923, W. S. Brookover was appointed Paul's guardian. The plaintiff sues as such guardian and in his individual capacity. The matter of settlement of the accounts of the guardian is the secondary matter involved. Paul Brookover died February 24, 1928, age eighteen, intestate, unmarried and without issue, leaving his father surviving him as his sole heir at law.

It is the position of the plaintiff that the several devises to Paul Brookover, under Items IV, V and VI of the Samuel L. Morgan will, were in fee simple absolute, and that upon Paul's death, the title to the land so devised to Paul passed by descent to his father as sole heir; and that under the bequest of personal property in Item VII of the will, Paul's interest was likewise unqualified, and on his death passed under the distribution statute to his father. These contentions are opposed by the defendants. They say that the several devises and the bequest to Paul were all based on the contingencies set forth in the said several items, respectively, and that on his death, the property which had been conditionally de-

vised and bequeathed to him, passed under the will, to the remaindermen designated therein. The court resolved these contentions against the plaintiff and he appealed. Favorable to the plaintiff, however, the court held that subsequent to the death of Samuel L. Morgan, his devisee and legatee, Paul Brookover, was entitled to the rents and profits of the property which had been given to him under the will, and that as to such emoluments the plaintiff, as guardian of Paul, was not required to make an accounting to the defendants. To this holding, adverse to them, the defendants cross-assign error.

Samuel L. Morgan was survived by two daughters, Lottie Grimm and Minnie Yoho, by Paul Brookover, his great-grandson, being the grandson of the testator's deceased daughter, Frances Morgan Martin, and by his grandchildren, sons and daughters of his deceased son, Richard T. Morgan.

By the first Item of his will, the testator provided for the payment of his debts, by the second, he devised certain real estate to his daughter, Minnie Yoho, and the third embraced a devise jointly to his daughter, Lottie B. Grimm, and the heirs of Richard T. Morgan, deceased.

Item IV of the will reads as follows:

"I give unto Paul Brookover, infant, great-grandson, grand-son of Frances Martin, deceased, wife of Ben Martin, of Minnie, West Virginia, the following real estate: Thirty-three and 1-3 (33 1-3) acres, more or less, on the head waters of Turkey Run, purchased from John Chaplin; Seventy-seven (77) acres, more or less, on the south side of Big Fishing Creek and one hundred and Thirty-four (134) acres, more or less, the last two of said tracts purchased from Adam Kuhn. It is my will that the said Ben Martin shall have a life time interest in the real estate devised to the said Paul Brookover.

"If the said Paul Brookover shall die without issue living and leave a widow, then said widow to have a life time interest in said real estate and at her death, it is my will, after the death of the said Ben Martin, that the real estate so devised to the said Paul Brookover shall

descend equally to the said Lottie Grimm or her heirs; Minnie Yoho, or her heirs, and the heirs of Richard T. Morgan, deceased.

"I reserve all my rights to the coal, oil and gas within and under said tracts of land."

Ben Martin, (grandfather of Paul) life tenant under the said item, died in March, 1925. That life tenancy, therefore, is not involved in the juristical problem now presented. The dominant inquiry centers in the language "If the said Paul Brookover shall die without issue living and leave a widow, then said widow to have a life time interest in said real estate and at her death, it is my will, * * * that the real estate so devised to the said Paul Brookover shall descend equally" to the parties named. Technical meaning should not be ascribed to the word "descend" as herein used by the testator. Obviously, it is employed in the sense of "devise" or "pass by devise". It is true that technical words employed in a will should ordinarily be given their strict meaning, but the rule is not absolute. Where it appears from the context that another meaning was intended, the courts will not apply the technical import. 1 Page on Wills (2d Ed.), section 822; 28 Ruling Case Law, p. 219. If the provisions in respect of the remainder were that it should descend to the devisee's heirs as in *Trahern v. Woolwine,* 109 W. Va. 623, 155 S. E. 909, there would be a strong presumption that the testator employed the word "descend" in its technical meaning, because it is logical that real estate should descend to heirs; but here, the testator provided that the property should "descend" to indicated persons, not heirs of Paul Brookover. This is wholly illogical. He meant, of course, that the property should pass to those persons upon the contingency stated. Evidently, he was not thinking of descent under the statute, but of a passage of the title of the property by devise, as he therein specified.

So, in respect of the limitation under Item IV of the will, leaving out of consideration the Ben Martin life estate, it was the testator's expressed intention that if Paul Brookover, to whom three parcels of real estate

were devised by said article, should die without living issue and leave a widow, the widow should have a life interest in the said tracts of land, and after her death, the property should pass to three groups of persons indicated but undetermined.

In the construction of wills, the testamentary intent is ordinarily controlling. *Pack* v. *Shanklin*, 43 W. Va. 304, 27 S. E. 389; *Woodbridge* v. *Woodbridge*, 88 W. Va. 187, 106 S. E. 437. The intent shall be determined from what the words express. *Hobbs* v. *Brenneman*, 94 W. Va. 320, 326, 118 S. E. 546. And the intent, thus ascertained, shall be given effect "unless to do so would violate some positive rule of law or public policy." *McCreery* v. *Johnston*, 90 W. Va. 80, 110 S. E. 464. If the intent of the testator, as indicated by the words used, violates the rule against perpetuities, the rule shall prevail and will be inexorably applied. This canon of law is paramount to the desire of the individual, and, in fact, the more clearly the intent appears, if it runs counter to the rule, the more rigorously the latter will be enforced. "The rule against perpetuities is an arbitrary one applied for the purpose of preventing an owner of property from controlling its devolution beyond a certain period. It is not a rule of construction. In the application of the rule every provision of the will or deed is to be construed as if the rule did not exist, and then when the real intent of the testator in a will, or the grantor in a deed, is determined, the rule is remorselessly applied, and if the paper thus construed offends against the rule it will not be allowed to stand." *Prichard* v. *Prichard*, 91 W. Va. 398, 404, 113 S. E. 256, 258.

The plaintiff contends that the testamentary item now under consideration is in violation of the rule against perpetuities. The rule is this: An executory limitation by deed or will, which need not necessarily vest within a life or lives in being, and twenty-one years and ten months thereafter, is void. *Woodall* v. *Bruen*, 76 W. Va. 193, 85 S. E. 170; 2 Minor's Institutes, p. 376. The matter of probabilities does not enter the equation. The canon requires that "every executory limitation, in order to be

valid, shall be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed only in those cases in which it is a factor." I Minor on Real Property (2d Ed.), section 809. Another eminent authority thus states the requirement: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray on The Rule Against Perpetuities (3rd Ed.), section 201. An estate for life in a person not in being at the testator's death cannot be interposed between the estate of the first taker and the vesting of the remainder. A limitation of vesting sought to be based on such intervening life estate is void, and the first taker becomes vested with the fee. Like result attends if the situation involves a contemplated life tenant, who, by any possibility, may not have come into being at the time the deed or will becomes effective. Illustrative of this phase of the rule is the following statement from a distinguished author: "Devise to such of the testator's grandchildren as shall survive both their parents, viz., the testator's child, and his or her wife or husband. For the testator's child may marry some person unborn at the testator's death; and as the gift to the grandchildren is not to take effect until after the death of both of their parents, this, in the case supposed, would be after a life not in being at the testator's death which makes the gift to the grandchildren void for remoteness." Graves' Notes on Real Property, p. 258. "It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the Rule against Perpetuities; if it can possibly happen beyond those limits, an interest conditioned on it is too remote." Gray on The Rule Against Perpetuities (3rd Ed.), section 214.

Consider now the contingency involved in Item IV of the Samuel L. Morgan will. It provides that if Paul Brookover shall die without living issue and leave a widow, she shall have a life estate, the remainder thereafter to become vested in persons to be determined at the widow's death. At the time of the testator's death, Paul

Brookover was a boy of thirteen years. It was altogether possible that he might in manhood marry a woman not in being at the testator's death, and that she would become Paul's widow. In that contingency, the ultimate vesting of the estate would be postponed on account of a life not in being at the testator's death. Clearly, under the authorities stated above, the executory limitation is void. The language employed does not disclose an intent that at the testator's death there should immediately vest in the remaindermen a present fixed right of future enjoyment so as to bring their status within the principle employed in *Post* v. *Bailey*, 110 W. Va. 504, 159 S. E. 524.

Therefore, Paul Brookover took a fee simple in the three parcels of land mentioned in Item IV of the will, subject only to a life estate in his widow if he left one. But he never married, so, at his death, the said lands passed by descent to his father, W. S. Brookover, to the exclusion of the contingent remaindermen. Consequently, the holding of the circuit court respecting the title to the land embraced in this paragraph of the will is reversed. But the chancellor's further finding that no accounting of rents, issues and profits by the guardian of Paul Brookover to the remaindermen on account of these lands shall be required, is affirmed.

Item V of the will follows:

"It is my will that the Two Hundred Ninety (290) acres, more or less of land, on the head waters of Hupp's Run in Wetzel County, West Virginia, if not sold at my death, shall descend to and I hereby give unto the following parties equally: Lottie Grimm, or her heirs; Minnie Yoho, or her heirs; the heirs of Richard T. Morgan, deceased, and Paul Brookover, or his children, and if the said Paul Brookover shall die without issue living and leave a widow, then said widow to have a life time interest in said real estate and then at her death, or if he should die without marrying and without issue, then his share shall descend to and I hereby direct that it be divided equally among the following persons: Lottie Grimm, or her heirs, Minnie Yoho, or her heirs and the

heirs of Richard T. Morgan, deceased. It is my will that the commissioners heretofore mentioned shall partition this tract of land, and the devisees pay equally the costs of this partition.

"I reserve the oil, gas and coal within and under this tract of land."

Apropos of the construction of this item, the lines of contest are drawn between the parties just as with reference to Item IV. The subject involved is devolution of the Paul Brookover one-fourth interest in the property described in this paragraph.

The word "descend", twice used in this item, for the reasons stated in discussion of the same word in Item IV, should be considered as having been employed by the testator in a non-technical sense, and, that in the manner used, it conveys the meaning of transmission or devolution by devise. Thus, by Item V, there was devised in equal undivided fourths to Lottie Grimm, Minnie Yoho, the heirs of Richard T. Morgan, deceased, and Paul Brookover, a tract of 290 acres of land. The phrase "or her heirs" following both the name of Lottie Grimm and the name of Minnie Yoho, and the phrase "or his children" following the name of Paul Brookover, tend to confusion; but for the purposes here involved it will be considered that the primary investiture manifested by the words employed was intended by the testator to be in the manner just above indicated. But a contingency was attached, in fact, there were two contingencies. They appear in this language: "And if the said Paul Brookover shall die without issue living and leave a widow, then said widow to have a life time interest in said real estate and then at her death, or if he should die without marrying and without issue, then his share shall descend to and I hereby direct that it be divided equally" among the persons there named. The first of these two executory limitations is that if Paul Brookover should die without issue living and leave a widow, she should have a life estate in the realty therein devised to Paul, and at her death the remainder should vest in the persons indicated. The second of the two contingencies is that

if Paul should die without marrying and without issue, his share in the 290 acres of land should become vested in the persons named, to-wit, Lottie Grimm, Minnie Yoho, and the heirs of Richard T. Morgan, deceased. The first of the contingencies, involving a life estate to a possible widow of Paul Brookover, is void, for the reasons stated in discussion of the identical proposition under Item IV of the will. The second, or alternative, contingency does not violate the rule against perpetuities. The event—Paul's dying unmarried and without issue— if it happened at all, was bound to happen within the period of delay permitted by the canon stated. No rule of law having been violated by this second contingency, the remainder must be deemed to have vested in accordance therewith. The valid contingency is not vitiated by the void one conjoined therewith. The event was controlling of the vesting of the remainder, that is to say, Paul Brookover did die unmarried and without issue. Many decisions clearly illustrate and firmly establish the ground on which this analysis is based.

"Where a limitation is to arise upon an alternative event, one branch of which is within and the other is not within the prescribed limits, it will take effect or not, according to the event. * * * So far as the gift over depends upon the single event which may or may not happen within the required time, it is void, and the actual happening of the event within that time cannot make it good; but so far as it depends upon the alternative event, which must happen, if at all, within the limit of the rule, the gift over is good, and if that event actually does happen, the estate will take effect without regard to the consideration that upon a different contingency, which might or might not happen within the lawful limit, the limitation would be void for remoteness." *Quinlan* v. *Wickman*, 233 Ill. 39, 84 N. E. 38, 17 L. R. A. (N. S.) 216. In *Armstrong* v. *Armstrong*, 14 B. Mon. (53 Ky. 333) 346, the rule is thus stated: "Where a limitation is made to take effect on two alternative events or contingencies with a double aspect, one of which is too remote, and the other valid, as being within the prescribed

limits, although it is void so far as it depends upon the remote event, it will be allowed to take effect on the alternative one." Concordant with these statements of the rule: *Schettler* v. *Smith*, 41 N. Y. 328; *Springfield Safe Deposit & Trust Co.* v. *Ireland*, 268 Mass. 62, 167 N. E. 261, 64 A. L. R. 1071 and annotation; *Cambridge* v. *Rous*, 53 Eng. Rep. (Reprint) 693; *Longhead* v. *Phelps*, 96 Eng. Rep. (Reprint) 414; 1 Jarman on Wills (6th Ed.), p. 354; 48 Corpus Juris, p. 945 and cases cited.

For the reasons above set forth, we affirm the finding of the trial court that under Item V of the will, Paul Brookover took a defeasible fee in an undivided one-fourth of the 290 acres of land therein mentioned, and that upon his death unmarried and without issue, the said undivided one-fourth interest passed under the will to the remaindermen, Lottie Grimm, Minnie Yoho and the heirs of Richard T. Morgan, deceased, and that no interest in said undivided interest passed by descent from Paul Brookover to his father. Also, we affirm the further finding of the trial court that Paul Brookover, for the period intervening between the death of Samuel L. Morgan and Paul's death, was entitled to all of the rents and profits arising from the enjoyment of an undivided one-fourth interest in said tract of land, and that W. S. Brookover as guardian of Paul is not required to render an account thereof to the remaindermen.

Item VI of the will:

"I give unto Lottie Grimm, Minnie Yoho, the heirs of Richard T. Morgan, deceased, and Paul Brookover all the gas, oil and coal within and under all the real estate of which I may die seized, and all the oil, gas and coal rights and privileges owned by me at my death, to be held jointly in the proportion of one-fourth ($\frac{1}{4}$) by Lottie Grimm; one-fourth ($\frac{1}{4}$) by Minnie Yoho; one-fourth ($\frac{1}{4}$) by the heirs of Richard T. Morgan, deceased, and one-fourth ($\frac{1}{4}$) by Paul Brookover. If the said Paul Brookover should die without issue living it is my will that his interest shall descend to the other parties last above named in the porportion of one-third (1-3) to Minnie Yoho, one-third (1-3) to Lottie Grimm and one-third (1-3) to the heirs of Richard T. Morgan, deceased.

"It is my will and I hereby appoint and designate my executors hereinafter named attorneys to sell any oil and gas royalties, or the products from said oil and gas royalties, produced from the oil and gas rights and privileges hereby devised, and to distribute the same according to the interests of the parties owning the gas and oil, as provided in this will."

Here again, for reasons already stated, the word "descend" should be construed in a non-technical sense, and to direct the vesting of the contingent remainder by devise. The limitation, then, is simple and uncomplicated, namely, if Paul Brookover should die without issue living, his interest shall become vested in the remaindermen, Minnie Yoho, Lottie Grimm, and the heirs of Richard T. Morgan, deceased. Such devolution operates, of course, to the exclusion of Paul's father, W. S. Brookover. The language employed in the framing of this contingency cannot be construed, as contended for by the plaintiff, as referring to the death of Paul Brookover only in event he should die before the testator died. If this item stood alone, the contention thus urged would possibly be better grounded, but, it must be read and considered in conjunction with all the other provisions of the will. The general context of the will indicates, we think, beyond doubt, the testator was undertaking to stipulate definitely as to the devolution of the property devised and bequeathed to Paul Brookover, in event Paul, subsequent to the death of the testator, should die without issue. This is evidenced by the fact that in Items IV, V and VII, special provision was undertaken to be made for a possible widow of Paul Brookover. Having in mind that Paul was a young boy, and his great-grandfather was an aged man, it is not to be regarded that the testator considered there might be a widow of Paul Brookover within the testator's lifetime. It was with events subsequent to his own death that the testator was attempting to deal. It was a general rule that in the construction of wills, words of survivorship should be deemed to refer to the death of the testator. This principle, deemed too narrow and restrictive, has yielded in

later years to more flexible interpretation of such testamentary provisions. Under the modern rule, " survivorship will be referred to the event plainly intended by the testator, whether that event be before, at the time of, or after the death of the testator." *Neal* v. *Hamilton Co.,* 70 W. Va. 250, 73 S. E. 971, citing *Schaeffer* v. *Schaeffer,* 54 W. Va. 681, 46 S. E. 150, and *Dent* v. *Pickens,* 61 W. Va. 488, 58 S. E. 1029. Consult *Prichard* v. *Prichard,* 83 W. Va. 652, 98 S. E. 877, and *Bank* v. *Kenney,* 113 W. Va. 890, 170 S. E. 177.

By the language used in the latter part of this item, the testator clothed his executors with the powers of trustees, to sell the oil and gas royalties, or the products therefrom and to distribute the proceeds in accordance with the provisions of the item. This was a convenient and practical arrangement. We are not convinced that, as urged by the plaintiff, this was tantamount to a vesture in the legatees under said paragraph of the unqualified right to dispose of the royalties, and that, by reason of such unqualified right, there was created in the devisees full right to, and complete domination over, the property involved. We are impressed that a provision for a trustee to deal with specified property and pay the proceeds to a beneficiary, is an entirely different proposition from clothing the beneficiary with unlimited authority over the property. It follows, therefore, we affirm the trial court's holding that at Paul's death the title to his one-fourth interest in the oil and gas properties embraced in this item, passed by devise to the remaindermen, and that no part of the corpus of said property passed by descent from Paul to his father. Also, we affirm the trial chancellor's further finding, pertaining to this item, that rents, issues and profits arising to Paul from his said interest became his absolute property, passed to his father under statute of distribution, and no accounting therefor need be made by Paul's guardian to the remaindermen.

Item VII of the will reads thus:

"It is my will that all of my personal property, including moneys, bonds, notes, stocks and all other personalty

of whatsoever kind and wherever found, after the payment of debts, expenses of execution of this will and commissions of executors, be divided equally among the hereinafter named heirs and I give unto them the following proportions: Lottie Grimm, one-fourth (1-4) ; Minnie Yoho, one-fourth (1-4) ; the heirs of Richard T. Morgan, deceased, one-fourth (1-4) and Paul Brookover, one-fourth (1-4). If the said Paul Brookover should die without issue living and leave a widow, then said widow to have her legal interest in same, or if he should die unmarried, or after widow's interest has been taken care of, then it is my will that the balance of his said interest shall be divided equally among Lottie Grimm, or her heirs, Minnie Yoho, or her heirs and the heirs of Richard T. Morgan, deceased.

"It is my will that if any of the heirs taking under this will shall be under the age of twenty-one (21) years at my death, the guardians of said heirs shall hold the interests of said infant heirs in trust until the wards shall become of age, using the interest on said funds, if necessary, for the support and education of said wards."

This is a bequest in interests of one-fourth each to Lottie Grimm, Minnie Yoho, the heirs of Richard T. Morgan, deceased, and Paul Brookover. The limitations attendant upon the bequest to Paul are highly involved. The phrase "or after widow's interest has been taken care of" is insoluble and meaningless, and will therefore be omitted from the equation. Thus necessarily deleted, the contingencies are (1) If Paul Brookover should die without legal issue living and leave a widow, she should "have her legal interest" in Paul's one-fourth of the said personalty; (2) If Paul should die unmarried, then the "balance of his said interest shall be divided equally among Lottie Grimm, or her heirs, Minnie Yoho, or her heirs and the heirs of Richard T. Morgan, deceased." Under the first, the requirement is that she shall have her "legal interest". The subject is personalty. What she would receive under the limitation would be the same as she would have received under the statute of descent and distribution then in effect. Code 1923,

chapter 78, section 9. It provided that if an intestate left a widow and no children, she should receive all of his personal estate. If this contingency had eventualized, the widow would have been entitled to all of the personal property bequeathed to Paul under this item, and that would have been the end of the matter. The rule against perpetuities is not thereby involved. The second contingency, or conditional limitation, set up in this item, requires that in event Paul should die unmarried, the "balance" of his one-fourth interest in the personalty shall devolve upon the persons named. Clearly, this is within the period permitted by the rule against perpetuities and is not violative thereof.

By the first part of this item, there are bequeathed the several one-fourths of the personal property separately, without qualification or limitation. All of the takers are placed on the same footing, and there is nothing appearing in the after-part of the item to cut down or limit the interests of Lottie Grimm, Minnie Yoho, or the heirs of Richard T. Morgan, deceased. It is only as to Paul Brookover that there is an attempted limitation imposed, but even as to him the limitation is strictly qualified. The provision is that "the balance of his said interest shall be divided equally" among the persons named. The clear and necessary implication from the use of the words "the balance" is that Paul should have unqualified authority to use the proceeds of the bequest as he should see fit. Whether there would be a balance would depend entirely on the extent of his expenditures. So, this was tantamount to the vesting in him of full and unqualified dominion over the property included in the bequest which was thus made to him. This made him the absolute owner of the subject matter of the bequest. There could be no limitation over because the title of the first taker absorbed all. The claim of the remaindermen cannot be sustained. The portion of Paul's bequest under this item, unconsumed at his death, passed under the statute of distribution, to his father, W. S. Brookover, plaintiff. These results are based on ample authority.

As a preface to a brief review of these authorities,

mention should first be made that we now have a statute, Code 36-1-16, the general purpose of which is to uphold limitations such as the one here involved. But that statute did not become effective until the rights of the parties hereunder had crystalized under the law as it existed before the statute was enacted. Hence, the statute does not enter our problem. The State of Virginia has a similar statute. Virginia Code 1930, section 5147. But, antedating the statutes, there are many cases in both states dealing with the general subject. Where a life estate has been created by deed or will with full right in the recipient to use the same and make final disposition thereof, it has generally been held that the estate was unqualified and that the attempted limitation over was void. *May* v. *Joynes* (Va.), 20 Gratt. 692; *The Missionary Society* v. *Calvert's Admr.*, (Va.) 32 Gratt. 357; *Hall* v. *Palmer*, 87 Va. 354, 12 S. E. 618, 11 L. R. A. 610, 24 Am. St. Rep. 653; *Farish* v. *Wayman*, 91 Va. 430, 21 S. E. 810; *Rolley* v. *Rolley's Exrx.*, 109 Va. 449, 63 S. E. 988, 21 L. R. A. (N. S.) 64; *Milhollen Admr.* v. *Rice*, 13 W. Va. 510; *Morgan* v. *Morgan*, 60 W. Va. 327, 55 S. E. 389, 9 Ann. Cas. 943; *National Surety Co.* v. *Jarrett*, 95 W. Va. 420, 121 S. E. 291, 36 A. L. R. 1171; *Raines* v. *Heslip*, 113 W. Va. 870, 169 S. E. 617; *Hustead* v. *Murray*, 115 W. Va. 660, 177 S. E. 898. But where the language of the deed or will does not disclose a dominant intent that the recipient of the life estate should have unqualified dominion over the property, such estate will not be enlarged by equivocal language. *Stout* v. *Clifford*, 70 W. Va. 178, 73 S. E. 316; *Davis* v. *Kendall*, 103 Va. 175, 107 S. E. 751.

Emphasis must be laid on the two catagories of cases falling under this general heading. First, there is that group wherein the initial estate is a life estate which may or may not, by subsequent language in the deed or will, be enlarged into an absolute estate (such are the cases above cited) ; and, second, cases where the devise, bequest, grant or gift is of the property, generally, not purporting to be limited to a life estate, but attended by language indicating an unqualified dominion on the part

of the first taker, with a contingent limitation over. If a life estate is enlarged into an absolute estate by the right of unqualified user and disposal (such is the general rule as above shown), *a fortiori* should the unqualifiedness of the estate be emphasized where there is no mention of a mere lifetime user or occupancy though a limitation is attempted to be imposed. Item VII of the Morgan will falls under the latter head—an unqualified bequest to Paul Brookover with an attempted contingent limitation appended. Such situations are generally deemed to be creative of absolute estates, necessarily precluding executory limitations to designated persons. IV Kent's Commentaries (14th Ed.), p. 320; *Gaskins* v. *Hunton*, 92 Va. 528, 23 S. E. 885; *Brown's Guardian* v. *Strother's Admr.*, 102 Va. 145, 47 S. E. 236; *Hawley* v. *Watkins*, 109 Va. 122, 63 S. E. 560. The explicit holding of this latter group of cases is at least in part grounded on the sound rule that an express grant, devise or bequest is not to be cut down by other words of the instrument unless clear and entirely effective for the purpose indicated. A comparatively recent Virginia case recognizes the principles herein discussed but holds that they have been superseded by the Virginia statute, *supra*. *Southworth* v. *Sullivan*, 162 Va. 325, 173 S. E. 524.

In the light of the foregoing discussion of Item VII of the Morgan will and of the principles applicable to the construction thereof, we are of opinion that the circuit court was in error in holding that the remainder of Paul Brookover's share, under said item, became vested, at his death, in Lottie Grimm, Minnie Yoho and the heirs of Richard T. Morgan, deceased. It follows, also, that the further holding of the trial court that there shall be an accounting under said item by Paul's guardian to said remaindermen is likewise reversed.

The plaintiff challenges a purported settlement of his guardianship accounts by E. O. Keifer, a commissioner of accounts of Wetzel County. The said attempted settlement is at variance with the principles herein applied, in this, that it finds balances due by said guardian to the aforesaid remaindermen on account of rents, royal-

ties and income received by the said guardian, from Paul's interests under Items IV, V, VI and VII of the Morgan will, within the lifetime of said ward. The said commissioner of accounts' settlement cannot, therefore, be given effect.

We are further of opinion that there is no reason for an accounting by the said guardian to the remaindermen, growing out of Paul Brookover's interests under any of the items of Samuel L. Morgan's will, unless it be a fact that rents, royalties or profits, arising subsequent to Paul's death, were received by the guardian from properties specified in Items V and VI of the will.

In consequence of that which is above written, there will be an order entered here,

(1) Affirming the circuit court's decree wherein it was held (a) that W. S. Brookover, guardian of Paul Brookover, is not required to render to the remaindermen an accounting for income received within Paul's life time from properties under Items IV, V and VI of Samuel L. Morgan's will; (b) that under said Items V and VI the contingent limitations therein contained in favor of the named remaindermen have become vested, to the exclusion of W. S. Brookover as sole heir at law of Paul Brookover, deceased; and,

(2) Reversing the circuit court's decree wherein it was held (a) that under Items IV and VII of the Samuel L. Morgan will the contingent estates therein attempted to be created became vested in the remaindermen to the exclusion of W. S. Brookover as sole heir of Paul Brookover, deceased; (b) that the cause be referred to a commissioner in chancery for specified accounting to the remaindermen by the said guardian.

And, the decree thus being affirmed in part and reversed in part, the cause will be remanded to the trial court for further proceedings not at variance with the holdings herein specified.

*Affirmed in part; reversed in part; remanded.*

KENNA, PRESIDENT, dissenting:

I cannot agree with the construction placed upon the fourth item of the will of Samuel L. Morgan by a majority of the court, because I believe that that construction does unnecessary violence to the plain purpose of the testator and is not made necessary by any settled rules of construction or legal principles.

Of course, there can be no question about the operation of the first paragraph contained in the fourth item. If it stood alone, a fee simple estate would vest in Paul Brookover in remainder charged with a preceding life estate in Ben Martin.

Coming to the second paragraph in the fourth item, and leaving aside the question of whether this paragraph at the death of Paul Brookover ever in fact came into operation, which I shall deal with hereafter, the first question to be decided is whether the provisions of the second paragraph operate by way of executory limitation or by way of remainder. I, of course, recognize that for most practical purposes, this discrimination at this time and in this state is not important. However, as we shall see, in applying the rule against perpetuities the discrimination may become of assistance, it being perfectly clear from what is without doubt the overwhelming weight of authority that the rule against perpetuities has no application whatever to a vested remainder. Therefore, if the ultimate estate under the provisions of this will is a remainder which must vest within the time prescribed by the rule the question is solved.

I see nothing in the estate attempted to be created by the second paragraph of item four of the will before us that would violate any of the rules with reference to the creation of remainders. Unless it is contrary to the common law rules governing the creation of remainders, the estate does not fall within the definition of an executory limitation. Minor or Real Property, Vol. 1, Par. 781. I therefore think that we are dealing with language which creates remainders, and not executory limitations.

We are dealing with the second paragraph in the fourth item of the will, which reads as follows: "If the

said Paul Brookover shall die without issue living and leave a widow, then said widow to have a lifetime interest in said real estate and at her death, it is my will, after the death of the said Ben Martin, that the real estate so devised to the said Paul Brookover shall descend equally to the said Lottie Grimm or her heirs; Minnie Yoho, or her heirs, and the heirs of Richard T. Morgan, deceased." The language, "If the said Paul Brookover shall die without issue living * * *", I think clearly constitutes an implied devise to the issue of Paul Brookover, if any, living at the time of his death. *Wine* v. *Markwood et al.*, 31 Gratt. (72 Va.) 43; "Executory Interests", 4 Va. Law Register, 633, 650, 654. Of course, it is a devise in remainder subject to a first life estate in Paul Brookover, and a life estate in Ben Martin should he be living at the death of Paul Brookover. And it is a contingent remainder, but one that must vest in right, as distinguished from coming into enjoyment, upon the death of Paul Brookover, at which time his issue living would take a vested remainder subject only to a life estate in Ben Martin. Upon the death of Paul Brookover with issue in the lifetime of Ben Martin, the estate in his issue completely satisfies the definition of a vested remainder, because it has the present capacity to take effect in enjoyment at any moment upon the termination of the particular estate preceding it, namely, the life estate in Ben Martin. (Of course, if Ben Martin died before Paul Brookover, upon the death of the latter, his issue would take the absolute fee, all questions of future estates being ended.) The remainder which began as a contingent remainder dependent upon whether Paul Brookover should or should not leave surviving issue, would become a vested remainder in his issue if any survived him. Their estate then became certain and capable of taking effect in enjoyment the moment the life estate in Ben Martin, if he survived Paul Brookover, should be terminated. The death of Martin was, of course, an event which was bound to take place within a life in being at the death of the testator. So, also, was the death of Paul Brookover. The contingent remainder, therefore,

did not violate the rule against perpetuities. Since the rule against perpetuities does not apply to a vested remainder, the provision in no way violates that rule. *Gates* v. *Seibert*, 157 Mo. 254, 57 N. W. 1065, 80 Am. St. Rep. 625; *Melvin* v. *Hoffman*, 290 Mo. 464, 235 S. W. 107; *In Re Edwards' Estate*, 255 Pa. 358, 99 A. 1010; *Armstrong* v. *Barber*, 239 Ill. 389, 88 N. W. 246. Once the remainder became vested by the death of Paul Brookover, as it surely did, there was no basis for applying the rule. Even though the class (issue of Paul Brookover) might be subject to open up in favor of a child born after the death of Paul Brookover, that possibility must occur within the period of the rule.

Looking at the other possibility embraced in the second paragraph of item four, that is to say, the death of Paul Brookover without issue, we find that his widow, if he leaves one, is to have a life estate and that then, after the death of Ben Martin, the first life tenant, the real estate is to pass equally to Lottie Grimm and others. Here again, I think clearly, we have a remainder in Lottie Grimm and others which was contingent up to the time of the death of Paul Brookover, the contingency depending upon whether Paul Brookover died with issue. However, upon the death of Paul Brookover, the contingency was removed. If he died without issue, the remainder became vested in Lottie Grimm and others, subject to a life estate first in Ben Martin, and second, in the widow of Paul Brookover, should he leave a widow.

These life estates, of course, did not serve to postpone the vesting of the remainder. Upon the death of Paul Brookover, if he left no issue, the remainder in Lottie Grimm and others did not depend upon a contingency. It immediately took on the present capacity to take effect in enjoyment at any moment that the one remaining preceding particular estate for life should terminiate. There is no objection to the creation of two or more life estates preceding remainder. *Fitchie* v. *Brown*, 211 U. S. 321, 29 S. Ct. 106, 53 L. Ed. 202; *Madison* v. *Larmon*, 170 Ill. 65, 48 N. E. 556, 62 Am. St. Rep. 356.

So that, I conclude that the effect of the second paragraph of item four of the will is to create contingent remainders (probably more particularly "alternative" remainders), the one to the issue of Paul Brookover in the event he die with issue, and the other to Lottie Grimm and others in the event that he die without issue. It is perfectly plain that the contingency upon which these remainders turn was obliged to occur within a life in being and twenty-one years and ten months from the death of the testator. It is equally clear that upon the happening of the contingency, one of the remainders would be defeated and the other would vest. It is equally clear that the rule against perpetuities does not apply to a vested remainder. Hence, it is inevitable, under this provision of the will, that one or the other of the contingent remainders was bound to vest upon the death of Paul Brookover, an event obliged to happen within the time limitation of the rule against perpetuities, and once either had vested, the rule against perpetuities no longer applied.

I think with all deference that the majority opinion confuses the matter of postponing the *enjoyment* of an estate with the postponing of its *vesting*. The rule against perpetuities does not concern itself with enjoyment or possession. *Stout* v. *Clifford*, 70 W. Va. 178, 185, 73 S. E. 316. If the estate vests within the permitted time, the rule is satisfied. The enjoyment may be postponed beyond the permitted time without violating the rule.

The happening of the contingency which the majority opinion treats as causing this paragraph to violate the rule against perpetuities, namely, that Paul Brookover might marry a woman not in being at the death of the testator, would not postpone the *vesting* of the ultimate remainder. At most that circumstance could serve to postpone the *enjoyment* only of the vested remainder, an entirely different thing. The ultimate remainder in fee vests upon the death of Paul Brookover either in his surviving issue or, if he leave no issue, in Lottie Grimm and others. Preceding life estates such as we have here do not interfere with the vesting of this remainder.

But the majority opinion ignores a difficulty that, to my mind, must be confronted at the very threshhold of the problem embodied in the second paragraph of the fourth item of the will. That paragraph, reading down to the first comma, is as follows: "If the said Paul Brookover shall die without issue living and leave a widow, * * *." What follows of the paragraph seems dependent upon the happening of this double contingency. It never did happen. Paul Brookover did die without issue *but he did not leave a widow.* In many cases, it has been held that where a devise over is made subject to death coupled with other contingencies, all of the contingencies must occur before the provision takes effect. However, like so many other rules of construction, this one gives place to the intention of the testator to the contrary. In other words, it is simply an aid to get at the intention of the testator. See Harrison on Wills and Administration, Vol. 1, p. 541, Par. 270 (1). Sometimes in construing similar provisions, the disjunctive has been changed by construction to the conjunctive in order to avoid defeating the testator's manifest purpose. It is very doubtful, however, whether that sort of device would be of avail in this case. If, by construction, we were to make the provision before us read "if the said Paul Brookover should die without issue living *or* leave a widow," it is quite plain that we would not be effectuating the intention of the testator. We would simply be putting in an impossible provision. Paul Brookover's widow could not receive a life estate, of course, unless he left a widow. Then suppose that Paul Brookover died *with* issue and leaving no widow? This would defeat the fourth paragraph if its language is to be rigidly adhered to. It seems clear that what the testator intended was to give to the issue of Paul Brookover the remainder in fee after life estates to Ben Martin and to Paul Brookover's widow, should he leave one. Furthermore, it would seem that the testator intended to leave a life estate to Brookover's widow in any event, whether Brookover left issue surviving him or not. The testator intended that the remainder in fee should go to the issue of Paul Brookover

if he left issue at his death, and if not, that the remainder in fee should pass to Lottie Grimm and others. The testator manifestly did not purpose to die intestate as to this property.

It seems to my mind clear that the above purposes of the testator can, with reasonable certainty, be gathered from the language of the second paragraph of the fourth item of the will, although it must be confessed that the language alone is not sufficient to express those purposes. Certainly, there is not to be found in the language itself anything contrary to those purposes, and certainly we may depend upon the rule which presumes that the testator did not intend to die intestate as to the property that the provision deals with.

It is perfectly clear to my mind that the testator did not intend, in the event that Paul Brookover should die without issue, to make his leaving a widow a condition precedent to the vesting of the ultimate remainder in Lottie Grimm and others. In order to so construe the will, we would be obliged to suppose that if Paul Brookover died without issue and without leaving a widow the testator intended to die intestate as to the fee in this particular property. The presumption, of course, is against this supposition. If we read the second paragraph of the fourth item leaving out the words "and leave a widow, then said widow to have a lifetime interest in said real estate and at her death," I think we get clearly at the intention of the testator as to the disposition of the ultimate remainder in fee, implying, of course, as I have already said, a devise in fee to the issue of Paul Brookover should he leave issue surviving. Therefore, I think that the life estate in the widow of Paul Brookover is not intended as a condition precedent to the limitation over to Lottie Grimm and others in the event Brookover died without issue. I think the life estate to Brookover's widow is simply intended as a provision for the widow in the event a widow survives Paul Brookover and that the fact that no widow did survive does not prevent the limitation over from taking effect.

Of course, owing to the intricacy of this provision,

direct authority sustaining the views that I have expressed is necessarily scant. However, in the South Carolina case of *Gourdin* v. *Shrewsbury,* 11 S. C. 1, the Supreme Court of that state construed a provision in legal effect exactly like the one under discussion, and reached the exact conclusion that I have set forth. In that case, the testator had made provision for the survivor of his two daughters and her issue should she leave any, and had further provided: "But if she shall leave no child living at her death, and shall leave a husband surviving her, then the husband shall have such a proportion of the said stock and property as the law gives of the wife's estate in case of intestacy, under the act of the legislature, and the remainder shall go to the child or children of her deceased sister * * *." The survivor of the testator's daughters had died without issue and *without leaving a husband.* The court held that her leaving a husband was not a condition precedent to the taking effect of the limitation over by way of remainder which, *by the language,* followed and depended upon the provision for a surviving husband.

For the reasons set forth, I am of the opinion that the fourth item of the will before us in no way violates the rule against perpetuities, and that it is susceptible of construction which will effectuate the intention of the testator, under the circumstances, to vest the remainder in fee in Lottie Grimm and others. I therefore deferentially dissent to this part of the majority opinion, concurring in all other respects.